UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:17-CV-14431-ROSENBERG/MAYNARD

THEODORE SALEM,

    Plaintiff,

v.

CITY OF PORT ST. LUCIE,

    Defendant.
_____/

# ORDER GRANTING DEFENDANT'S MOTION
# FOR SUMMARY JUDGMENT AND CLOSING CASE

This matter is before the Court on Defendant City of Port St. Lucie's Motion for Summary Judgment, DE 27. The motion has been fully briefed, and the Court has considered Defendant's Motion for Summary Judgment, DE 27, Defendant's Statement of Undisputed Facts, DE 28, Plaintiff Theodore Salem's Response, DE 34, Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Statement of Facts, DE 35, Defendant's Reply, DE 40, all accompanying exhibits, the arguments heard at the Status Conference held on September 25, 2018, DE 36, and the record, and is otherwise fully advised in the premises.

Plaintiff's Complaint, DE 1, alleges five claims based on his dismissal from the City of Port St. Lucie Police Department. Claim I alleges an Americans with Disabilities Act (ADA) violation, Count II, a Title VII of the Civil Rights Act Violation (Title VII), Claim III, a violation of the Family and Medical Leave Act (FMLA), Count IV, an intentional infliction of emotion distress claim, and Count V, a breach of contract claim. The Court dismissed Count IV, an intentional infliction of emotional distress claim, on Defendant's Motion to Dismiss. DE 18. The parties stipulated to the dismissal of Count II, a violation of Title VII claim, following the status

conference on September 25, 2018, DE 39. Accordingly, this Order addresses Plaintiff's remaining claims, Counts I, III, and V.

For the reasons set forth below, the Motion is granted in favor of Defendant on all counts.

I. FACTS[1]

In April 2015, Plaintiff began working for the City of Port St. Lucie Police Department, a subdivision of Defendant, as a police officer assigned to the Uniformed Road Patrol Unit. DE 1 (Complaint), ¶ 14.[2] Plaintiff claims he had experience as a police officer, having previously served in Pennsylvania and Brevard County, Florida. *Id.* ¶ 15. In August 2015, Plaintiff was directed to respond to an off-duty detail at the Baker Act Ward of the St. Lucie Medical Center Emergency Room. DE 28 (Defendant's Facts), ¶ 8. Plaintiff alleges that he was not properly trained for this assignment. DE 35 (Plaintiff's Facts), ¶¶ 31–32; DE 1 (Complaint), ¶¶ 19–20. Defendant disputes this, and counters that there is no special training for this assignment. DE 17 (Defendant's Answer), ¶¶ 19–20; DE 35-1 (Bolduc Deposition), p. 67–78.

While in the Emergency Room, there was a physical altercation between Plaintiff and a patient. DE 28 (Defendant's Facts), ¶ 9. Plaintiff provides further details, which Defendant disputes, about this altercation in his Complaint: A mentally ill patient attacked Plaintiff, and the patient was believed to be under the influence of hallucinogenic drugs. DE 1 (Complaint), ¶ 21. According to Plaintiff, it took at least nine other staff members to restrain the patient. *Id.* ¶ 23. Shortly after this altercation, Plaintiff began experiencing a variety of symptoms associated with

---

[1] The facts stated herein are derived from Plaintiff's Complaint, DE 1, Defendant's Statement of Undisputed Facts, DE 28, and Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Statement, DE 35, and all of the exhibits cited therein. Where the parties' facts diverge, their different accounts of the facts giving rise to this lawsuit are noted. In addition, to the extent the Court cites facts in the record that were not cited by the parties, those facts have been included here for background informational purposes only. The Court has only considered cited facts when addressing the substance of the Motion, unless explicitly noted. *See* FED. R. CIV. P. 56(c)(3) ("The Court need consider only the cited materials.").

[2] The Court uses the pagination provided by the CMECF system as a header at the top of the page on filings, which occasionally differs from the pagination provided by the parties at the bottom of the page.

post-traumatic stress disorder (PTSD). *Id.* ¶¶ 24–25. Plaintiff sought treatment and was diagnosed with PTSD. *Id.* ¶ 26. Plaintiff was then placed on "restricted duty" in November, 2015 and relieved of his weapon. DE 28 (Defendant's Facts), ¶¶ 10–11. Restricted duty involved answering the phones, interfacing with the public, and writing reports from the office. *See* DE 27-2 (Salem Deposition), p. 70, lines 18-24; DE 35-1 (Bolduc Deposition), p. 112, lines 19-24.

A. <u>Plaintiff's FDLE Certification</u>

Defendant informed Plaintiff on March 28, 2016, that his Florida Department of Law Enforcement (FDLE) certification would lapse on July 1, 2018 unless he completed necessary retraining. DE 28 (Defendant's Facts), ¶ 19. Plaintiff's Restricted Duty Assignment notice prohibited Plaintiff from "work[ing] overtime, extra duty, [and] attend[ing] any training." DE 27-2 (Restricted Duty Assignment Memorandum), p. 167; *see also* DE 35 (Plaintiff's Facts), ¶ 35.[3] Plaintiff did complete many hours of training that did not require the use of a firearm while on restricted duty. *See* DE 1 (Complaint), ¶ 34; DE 35-1 (Bolduc Deposition), p. 128. Plaintiff did not complete the firearms retraining required to maintain his FDLE certification. *See* DE 28 (Defendant's Facts), ¶¶ 13–14, 20.

The parties disagree about why the firearms retraining was not completed: Plaintiff asserts that he was "expressly prohibited" from attending the necessary retraining sessions by Defendant. DE 35 (Plaintiff's Facts), ¶ 35.[4] However, Defendant maintains that the retraining could not be completed because Plaintiff had been relieved of his weapon on his doctor's order.

---

[3] In this paragraph, Plaintiff makes multiple assertions. Most significantly, Plaintiff asserts that "Defendant would not provide Plaintiff with any assistance of accommodations in scheduling alternative training if Plaintiff could not attend the scheduled sessions." DE 35, ¶ 35. The Court notes that this paragraph is not properly supported by a record citation. *See* FED. R. CIV. P. 56(c)(1); Local Rule 56.1(a)(2). Instead, Plaintiff refers back to paragraphs 29–31 of his Complaint, which Defendant admitted in part and denied in part. *See* DE 35, ¶ 35; DE 1, ¶¶ 29–31; DE 17, ¶¶ 29–31. Specifically, Defendant denied the allegation that "Defendant would not provide Plaintiff with any assistance or accommodations in scheduling alternative training." *See* DE 1, ¶ 31; DE 17, ¶ 31. Because Defendant denied this assertion, paragraph 35 of Plaintiff's Additional Facts, DE 35, is not appropriately supported by a record citation.

[4] This paragraph is not properly supported by a record citation. *See supra* fn. 3.

3

*See* DE 28 (Defendant's Facts) ¶¶ 11, 12–13, 20; *see also* DE 35-1 (Bolduc Deposition), p. 139, lines 15–18; *id.* at 138, lines 19-23 ("His doctor wouldn't clear him for use of force training, and that, ultimately, resulted in his de-certification."). The same was confirmed by Lieutenant DiMeo by affidavit. DE 27-3, p. 4. Plaintiff states as an additional fact that Chief Bolduc admitted that "the prohibition on attending training while on Restricted Duty should not have been included in the memorandum to Plaintiff dated March 28, 2016." DE 35 (Plaintiff's facts), ¶ 36 (citing Bolduc's deposition, p. 124–25). However, shortly after Chief Bolduc's statement regarding the March 28 Memorandum, he asserted that the Department was willing to work with Plaintiff to do what was necessary to maintain his certification. *Id.* at 129, lines 15–24; *id.* at 152, line 13 ("We were searching for an accommodation.").

B. <u>Plaintiff's Probationary Status</u>

On May 9, 2016, Plaintiff was informed by Defendant that his probationary period of employment would be extended an additional six months. DE 28 (Defendant's Facts), ¶ 15; DE 27-2 (Extension of Probation Memorandum), p. 169. Plaintiff's initial probationary period in Defendant's employ was scheduled to expire on June 5, 2016. DE 28 (Defendant's Facts), ¶ 12. The Extension of Probation Memorandum explained that the extension was to "provide time to evaluate your performance as a solo road patrol officer once you are no longer on Restricted Duty." DE 27-2 (Extension of Probation Memorandum), p. 169.

C. <u>Plaintiff's FMLA Leave</u>

In June 2016, Plaintiff requested twelve weeks of leave to care for his newborn son under the FMLA. DE 28 (Defendant's Facts), ¶ 16. Plaintiff's request was granted, *id.* ¶ 17, and Plaintiff began his FMLA leave on June 13, 2016, *id.* ¶ 20.

D. Plaintiff's Termination

On July 5, 2016, while on parental leave covered by the FMLA, Plaintiff was ordered to report to a meeting with Chief Bolduc. *Id.* ¶ 23. Plaintiff was terminated at the meeting. *Id.*; *see also* DE 27-2 (End of Probationary Employment Memorandum), p. 170. The End of Probationary Employment Memorandum explained that "[a]s of July 1, 2016, your certification as a police officer expired for Failure to Meet Mandatory Retraining Requirements. You no longer meet the essential requirements for the position of police officer[.]" *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48)

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of

material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III. ANALYSIS

#### A. Count I: Plaintiff's ADA Claims

The Americans with Disabilities Act (ADA) prohibits a covered employer from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

> A plaintiff advancing a claim of employment discrimination under the ADA must make a prima facie case establishing that (1) he has a disability, (2) he is a "qualified individual," which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability.

*Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000).

The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 43 U.S.C. § 12111(8).

6

If the plaintiff claims that his disability could have been reasonably accommodated, "[t]he plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255–56 (11th Cir. 2001) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997)); *see also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir. 1999) ("[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."). If the plaintiff does not identify an accommodation that is reasonable, "the employer has no affirmative duty to show undue hardship." *Frazier-White v. Gee*, 818 F.3d 1249, 1255–56 (11th Cir. 2016). Furthermore, the plaintiff's request for an accommodation must be "specific." *Id.* (citing *Gaston*, 167 F.3d at 1363–64 (11th Cir. 1999)).

Plaintiff alleges in his Complaint that he has a disability, that he was qualified for the job of police officer, and that he was unlawfully discriminated against on the basis of his disability. DE 1 (Complaint), ¶ 69–72. Plaintiff alleges he was discriminated against on the basis of his disability in the extension of his probationary period, in Defendant's failure to provide a reasonable accommodation for retraining to maintain his FDLE certification, and in his ultimate termination. *Id.*

Defendant argues in its Motion for Summary Judgment that Plaintiff was terminated solely because of his inability to maintain his FDLE certification, as required by Florida state law[5] and that no accommodation was possible. DE 27, p. 5. Plaintiff counters that his inability to

---

[5] In Florida, police officers are required to participate in ongoing training throughout their employment. *See* FLA. STAT. § 943.135 (2010). Specifically, officers are required to complete forty hours of training every four years. FLA. STAT. § 943.135(a). In addition, officers must maintain a firearms certification, which is reassessed by the state's law enforcement agency, Florida Department of Law Enforcement (FDLE) every two years. FLA. ADMIN. CODE r. 11B-27.00212(14) (2018). Officers who do not demonstrate proficient skills on the firearm qualification assessment, "shall not perform the duties of a sworn officer" and the certifications of officers who fail to meet the appropriate standards of firearm qualification become inactive if the appropriate document is not provided to FDLE by June 30

7

maintain his FDLE certification was caused by Defendant in failing to secure an exemption, waiver, or variance on his behalf. DE 34, p. 8–11; *see also* DE 35 (Plaintiff's Facts), ¶ 35.[6]

The Court agrees with Defendant that Plaintiff has not established a prima facie case of ADA discrimination, because Plaintiff has not produced evidence that he made a "specific" request for an accommodation of his disability.[7] Plaintiff points to state laws and regulations that would have enabled Plaintiff to seek an exemption, variance, or waiver from the FDLE certification requirements.[8] DE 34, p. 12–18; DE 35, ¶ 39. Yet Plaintiff cites to no evidence in his Statement of Disputed Facts for the proposition that he made a request for an accommodation in the form of an exemption, variance, or waiver from retraining. Plaintiff was required to cite to evidence pursuant to Federal Rule 56,[9] the Local Rules of this District,[10] the prior orders of this Court,[11] and case law in this Circuit. *E.g., Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) ("[J]udges are not like pigs, hunting for truffles" and the purpose of requiring parties to cite to specific evidence is so the "parties organize the evidence rather than leaving the burden upon the district judge.") (citations omitted). Plaintiff has not met his evidentiary burden to show that he made a specific request for an accommodation as the ADA requires, *see Frazier-White*, 818 F.3d at 1255–56, and Defendant's Motion for Summary Judgment is granted on this basis.

In the alternative, even if this Court were to exercise its discretion to comb through the

---

of the reporting year. FLA. ADMIN. CODE r. 11B-27.00212(14)(a–c).

[6] This paragraph is not properly supported by a record citation. *See supra* fn. 3.

[7] Plaintiff's failure to point to a specific request for an accommodation extends to all of the grounds upon which he claims discrimination under the ADA.

[8] First, the administrative code permits the agency administrator to apply for an Injury or Illness Exemption from police retraining requirements. FLA. ADMIN. CODE r. 11B-27.00212(14)(e) ("In the event a law enforcement officer is injured in the line of duty or has a chronic illness and fails to meet this standard by June 30 of a reporting years, the agency administrator or designee shall complete the Injury of Illness Exemption for the Firearms Law Enforcement Officer Qualification Standard form CJSTC-86B."). In addition, Florida law provides a general procedure for seeking a waiver or variance from any rule. *See* FLA. STAT. § 120.542(2) (2010) ("Variances and waivers shall be granted when . . . application of a rule would create a substantial hardship or would violate principles of fairness.").

[9] FED. R. CIV. P. 56(c)(3) "The Court need consider only the cited materials."

[10] A fact must be supported by "citing to particular parts of materials in the record." Local Rule 56(c)(1).

[11] Material facts "shall be supported by a specific citation." DE 6 at 9.

record for evidence that supports Plaintiff's position, the Court has located only the following exchange:

> Q. Did you ever ask about obtaining an exemption from your firearms training?
>
> A. (Plaintiff) I don't know that I would call it an "exemption." I believe I asked why I couldn't just do it once I was released from light duty.

DE 27-2 (Salem Deposition), p. 92, lines 21-25. Any reference to a date, time, or place is notably absent from this exchange, so it is impossible for the Court to ascertain whether this request might have been timely made. Even so, this single statement is so vague that it does not constitute a "specific" request for an accommodation.

Finally, the Court notes that Plaintiff's own allegations in his Complaint are insufficient under the ADA. Plaintiff alleges that at the July 5, 2016 meeting, when Plaintiff was ultimately terminated, Plaintiff "inquired as to the accommodations made for officers who are injured or pregnant during the time period preceding their retraining deadline." DE 1, ¶ 49. Assuming this statement is true (though it is denied by Defendant, DE 17, ¶ 49), it is insufficient to demonstrate Plaintiff made the appropriate request for an accommodation *and* demonstrated that the accommodation requested was reasonable[12] because the request was too late—by July 5th, Plaintiff's FDLE certification had already lapsed. Because Plaintiff's certification had lapsed, Plaintiff does not dispute[13] that the FDLE informed Defendant that an extension, waiver, or accommodation was impossible. *Compare* DE 28 (Defendant's Facts) at 3–4 *with* DE 35 (Plaintiff's Facts) at 4.

For the foregoing reasons, the Court concludes that Plaintiff has not established his prima

---

[12] *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255–56 (11th Cir. 2001).

[13] Plaintiff states that he "does not dispute that Defendant purports that the telephone conference . . . occurred." If this statement by Plaintiff was intended to convey to the Court that he does not dispute Defendant's Statement of Facts, DE 28, paragraph 22, the Court accepts Defendant's paragraph 22 as undisputed. If this statement by Plaintiff was intended to convey to the Court that Plaintiff disputes Defendant's paragraph 22 then the Court deems paragraph 22 to be admitted, because Plaintiff has cited no evidence in support of his dispute. *See* Local Rule 56.

facie case of an ADA violation, because Plaintiff has not set forth evidence that Plaintiff made a specific request for an accommodation of his disability. The Motion for Summary Judgment is therefore granted in favor of Defendant as to all ADA-violation claims in Count I.

B. <u>Count III: Plaintiff's FMLA Claims</u>

"There are two claims under the FMLA: interference and retaliation. A retaliation claim asserts that an employer discriminated against an employee for engaging in FMLA protected activity, while an interference claim asserts than an employer interfered with an employee's exercise of FMLA rights." *Pecora v. ADP, LLC*, 232 F. Supp. 3d 1213, 1220 (M.D. Fla. 2017). Plaintiff's Complaint alleges both claims in Count III. DE 1 (Complaint), ¶ 89.

*1. Plaintiff's Interference Claim*

To establish an interference claim under the FMLA, a plaintiff must show by a preponderance of the evidence that the employee was denied a benefit to which he or she was entitled to under the FMLA. *See Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1274 (11th Cir. 2012). It is undisputed that Plaintiff was granted his request to take FMLA leave at the birth of his son. DE 28 (Defendant's Facts), ¶ 16–18. However, Plaintiff argues that when Defendant ordered him to report to Chief Bolduc's office for a meeting on July 5, 2016, Defendant interfered with Plaintiff's FMLA leave, which had begun in June. DE 1 (Complaint), ¶ 89; DE 28 (Defendant's Statement of Facts), ¶ 23.

The FMLA does not provide clear guidance as to how much of an interference with FMLA leave is actionable. *See Antekeier v. Lab. Corp. Am.*, 295 F. Supp. 3d 679, 684 (E.D. Va. 2018) ("Although, the FMLA provides that an employer may not 'interfere with . . . the employee's exercise of his or her right[s]' under the FMLA there is no statutory definition or elucidation in the FMLA as to what constitutes interference. 29 U.S.C. § 2615(a)(1)."). In

addition, there have been very few cases to directly consider this question. *See id.* ("[T]here is no statutory guidance and little decisional law on the issue."). However, it is clear that not all communications between the employer and employee during FMLA leave rise to the level of a violation of the FMLA. In *Antekeier*, the district court considered whether a number of phone calls and emails between an employer and an employee, and among the employee's colleagues, while the employee was on FMLA leave, constituted a violation of the statute. *See id.* at 681–85. The court concluded that the contacts to the on-leave employee were either de minimis, or unrelated to work, and therefore granted summary judgment in the defendant's favor. *See id.* at 687.

Here, the Court finds that the meeting with Chief Bolduc, standing alone, is similarly insufficient to constitute an interference with Plaintiff's FMLA leave. The meeting was unrelated to work, did not require Plaintiff to act as a police officer in any capacity, and amounted to only a conversation. Accordingly, Plaintiff has not established a prima facie case for an FMLA interference claim, and Defendant's Motion for Summary Judgment as to Plaintiff's claim of FMLA interference, based on Plaintiff's required presence at the July 5, 2018 meeting, is granted in favor of Defendant.

2. *Plaintiff's Retaliation Claim*

To establish a retaliation claim under the FMLA when there is no direct evidence of retaliatory intent, a plaintiff must show that "(1) []he engaged in a statutorily protected activity; (2) []he suffered an adverse employment decision; and (3) the decision was causally related to a protected activity." *Pereda*, 666 F.3d at 1275 (citations omitted); *see also Vira v. Crowley Liner Serv., Inc.*, 723 F. App'x 888, 892–93 (11th Cir. 2018).[14] To prove a causal connection, a

---

[14] The Court acknowledges this case is unpublished. The Court accordingly does not rely exclusively on this case, but cites the case where appropriate to further elucidate FMLA law in the Eleventh Circuit, given that the case was

plaintiff must demonstrate that the "relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Jones v. Gulf Coast Health Care of Del., LLC.*, 854 F.3d 1261, 1271 (11th Cir. 2017) (citations omitted). "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id.* at 1271–72. However, "in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenn*, 453 F.3d 1301, 1308 (2006).

Once the plaintiff establishes a prima facie case for FMLA retaliation, the burden shifts to the defendant to show a legitimate reason for the adverse employment action. *See Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir.2001) (applying the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to an FMLA claim). Defendant must put forth a "*legitimate, non-retaliatory* reason for terminating" the employee. *Martin v. Brevard Cty. Pub. Schools*, 543 F.3d 1261, 1268 (emphasis added); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th 2006) ("If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a *legitimate* reason for the adverse action.") (emphasis added).

If the defendant proffers a legitimate reason for its actions, the burden shifts back to the plaintiff demonstrate that the proffered reason for the employment action was pretext for retaliation. *Martin*, 543 F.3d at 1268; *see also Vira*, 723 F. App'x at 892. To show pretext, "plaintiff must show both that the employer's explanation was false and that discrimination was the real reason for his decision." *Vira*, 723 F. App'x 888, 894 (citing *Brooks v. Cty. Comm'n of*

---

so recently considered.

*Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).

Here, Plaintiff asserts he was terminated in retaliation for taking parental leave at the birth of his son. DE 34, p. 18–19. Plaintiff vigorously argues that the "close temporal proximity" between Plaintiff's parental leave and his termination is evidence of the causal connection required between the adverse employment action and his engagement in the protected activity (parental leave). *Id.* at 15. Defendant argues in response that the City would have terminated Plaintiff regardless of his election to use parental leave because of his lapsed FDLE certification. DE 27, p. 9–11. Plaintiff replies that this rationale is pretextual, because there is a dispute about whether Plaintiff's FDLE certification could have been maintained. DE 34, p. 18. Plaintiff admits that he was not warned, threatened, or discouraged from taking FMLA leave. DE 28, ¶ 18.

First, the Court finds that Plaintiff has not met the causality requirement of the prima facie case for FMLA retaliation. It is undisputed that Defendant informed Plaintiff "via a memorandum dated March 28, 2016, that his FDLE certification would lapse on July 1, 2016." DE 28 (Defendant's Facts), ¶ 19. State law requires police officers to maintain their certification, and prohibits police departments from employing non-certified individuals as police officers. FLA. STAT. § 943.135 (2010). Given this state law and the Memorandum sent to Plaintiff, it is clear that Defendant contemplated the possibility of the adverse employment action months before Plaintiff requested FMLA leave in June, *see* DE 28 (Defendant's Facts), ¶ 16. Plaintiff has not put forth other evidence, beyond temporal proximity, to establish the causality prong of the prima facie case. Plaintiff's FMLA-retaliation claim therefore fails under *Drago*, 453 F.3d at 1308.

Even if the Court assumes *arguendo* that Plaintiff did meet his burden of establishing a

prima facie case for FMLA retaliation, Defendant has met its burden of producing a non-retaliatory explanation for Plaintiff's termination, but Plaintiff has not met his burden of showing pretext. *See Fong v. School Bd. of Palm Beach County*, 590 F. App'x 930, 934, n.7 (11th Cir. 2014) ("We have regularly assumed the establishment of a prima facie case where a plaintiff's claim of discrimination nevertheless failed at the pretext prong of the McDonnell Douglas test."). The Court finds that Defendant has met its burden of proffering a "legitimate, non-retaliatory" reason for Plaintiff's termination, namely, that Plaintiff failed to maintain his FDLE certification, rendering him unable to serve as a sworn police officer. DE 40, p. 7. Plaintiff was advised in March, 2016 that his FDLE certification would lapse at the end of June. DE 28 (Defendant's Facts), ¶ 11–19. In addition, the End of Probationary Employment Memorandum explicitly states that the reason for Plaintiff's termination was his failure to maintain his FDLE certification. DE 28 (Defendant's Facts), ¶ 15; DE 27-2 (End of Probationary Employment Memorandum), p. 170. Based on state law requiring all police officers to maintain their FDLE certification, FLA. STAT. § 943.135 (2010), Defendant has met its burden of proffering a legitimate and non-retaliatory reason for Plaintiff's termination.

Because Defendant has met its burden of raising a "legitimate, non-retaliatory reason for terminating" Plaintiff, *Martin*, 543 F.3d at 1268, it is Plaintiff's burden to show that this reason was pretextual for his termination. Plaintiff has not put forth any such evidence, but instead insists that the temporal proximity of the FMLA leave and termination establish a causal connection. DE 34, p. 19. This argument goes to establishing the prima facie case, but is insufficient to establish pretext. *Hurlbert*, 439 F.3d at 1298 ("The close temporal proximity between Hulbert's request for leave and his termination . . . is evidence of pretext, though probably insufficient to establish pretext by itself."); *Wascura v. City of S. Miami*, 257 F.3d

1238, 1244–45 (11th Cir. 2001).

The Court finds no other evidence in the record to suggest that Defendant's proffered explanation for firing Plaintiff was a pretext for retaliation against Plaintiff for taking FMLA leave. Nor has Plaintiff cited to any such evidence. Thus, Plaintiff has not met his burden of demonstrating that the certification explanation proffered by Defendant was pretextual. *Cf. Wascura*, 257 F.3d at 1248 (11th Cir. 20010 ("[W]e conclude that [Plaintiff] failed to present evidence from which a reasonable jury could find any causal connection between [Plaintiff's notice of FMLA leave] and her subsequent termination. . . . [Defendant] adduced evidence of legitimate reasons for its termination action unrelated to [Plaintiff's notice of FMLA leave] and [Plaintiff] failed to create a genuine issue of fact with respect to any causal connection between her notice to [her employer] of her potential need to take time off . . . and her termination. Aside from the temporal proximity, [Plaintiff] introduced virtually no evidence of a causal connection.").

To summarize, Plaintiff has not established a prima facie case of either FMLA interference or FMLA retaliation. Plaintiff's FMLA-retaliation claim also fails under the *McDonald Douglas* burden shifting framework. Therefore, Defendant's Motion for Summary Judgment is granted in favor of Defendant as to all FMLA claims included in Count III of the Complaint.

C. Count V: Plaintiff's Breach of Contract Claims

In his final claim, Plaintiff alleges that Defendant breached the Collective Bargaining Agreement, first, by improperly extending Plaintiff's probationary period, and second, by failing to classify Plaintiff's termination as a "medical" termination. Defendant seeks summary judgment on both claims.

1. *The Probation Extension*

Plaintiff argues that his contract should not have been extended for six months, because the Collective Bargaining Agreement only permits probation extensions of ninety days. DE 34 (Plaintiff's Response), p. 16; *see also* DE 27-1 (Collective Bargaining Agreement) ("Probation may be extended up to a maximum of 90 days at the discretion of the Chief of Police or his designee."). Defendant in turn asserts Plaintiff was not a party to the contract. In the alternative, Defendant argues that even if Plaintiff was a party to the contract and his probation extension was invalid, Plaintiff has not provided facts to support damages, given that Plaintiff was ultimately terminated before a permissible extension of ninety days would have expired.

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co.*, LLC, 175 F.3d 913, 913 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). The Court assumes, without deciding, that the first two elements of a breach of contract claim have been met, however, Defendant has demonstrated that there is no evidence as to the third element — a showing of damages.

There is undisputed evidence that Plaintiff's initial probationary period was scheduled to end on June 5, 2016. DE 28 (Defendant's Facts), ¶15; DE 27-2 (Extension of Probation Memorandum), p. 169. If Defendant had properly extended Plaintiff's probationary period by only ninety days, as contemplated by the Collective Bargaining Agreement, DE 27-1, p. 51, Plaintiff's probationary period could have been extended through roughly September 4, 2016. Plaintiff was terminated on July 5, 2016. DE 27-2 (End of Probationary Employment Memorandum), p. 170. Thus, *if* there was a breach of the contract, the breach amounts to an error in paperwork. The breach did not lead to any damages for Plaintiff, and Plaintiff has not rebutted

this argument on damages in his Response to Defendant's Motion for Summary Judgment. DE 34. Because there is no record evidence that the extension of the probationary period caused Plaintiff any damages, Defendant is entitled to summary judgment on this aspect of Plaintiff's breach of contract claim.

    2. *The Failure to Designate Termination as a Medical Termination*

In his Complaint, Plaintiff also alleges a breach of contract in Defendant's failure to classify his termination as a medical termination: "Upon information and belief, Defendant intentionally misclassified Plaintiff's termination as non-medical for the purpose of depriving Plaintiff of earned disability pension benefits." DE 1 (Complaint), ¶ 58. Defendant responds in its Motion for Summary Judgement that Defendant did instruct Plaintiff to speak with Human Resources regarding any benefits. DE 27 (Defendant's Motion for Summary Judgment), p. 14; *see also* DE 27-2 (Extension of Probation Memorandum), p. 169 ("[Y]ou may contact the City's Human Resources Department at 344-4345 to make arrangements to retrieve your final paycheck and discuss your City Benefits."). Plaintiff cites no law, regulation, or contract clause to suggest that Defendant was required by the CBA to classify Plaintiff's termination as a medical termination. Thus, Plaintiff has not met its burden of demonstrating the legal basis for this claim, and Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract based on Defendant's alleged failure to classify Plaintiff's termination as a medical termination.

### IV.   CONCLUSION

For the reasons stated herein, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment, DE 27, in favor of Defendant on Plaintiff's claims for ADA violations in Count I, claims for FMLA violations in Count III, and breach of contract claims in Count V.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Final Summary Judgment [DE 27] is **GRANTED**.

2. Because there are no remaining claims in this case, the Clerk of the Court is ordered to **CLOSE** this case.

3. Defendant is **ORDERED** to submit a proposed Final Judgment Order to the Court's email address (Rosenberg@flsd.uscourts.gov) within two days of the rendition of this Order.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 30th day of October, 2018.

                                            ROBIN L. ROSENBERG
                                            UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record